## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **METRO CONTAINER GROUP** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 18-3623** |
| **AC&T CO., INC. et al.,** | : | |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                          MARCH 27, 2020

      The Metro Container Group ("Metro"), an unincorporated association of several entities, has sued numerous defendants pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, for cost recovery, contribution, and declaratory relief related to costs Metro incurred in efforts to remove contamination at the Metro Container Site in Trainer, Pennsylvania.

      Before the Court are the motions from no less than 30 Defendants, seeking to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), 12(c),[1] and 12(e). For the reasons set forth below, the Court will permit the Section 113(f) claim to proceed, as well as Metro's claim for declaratory judgment. The Section 107(a) claim is dismissed. Furthermore, as to certain defendants, alleged to be successors of contributors of waste at the site, the Court will dismiss the complaint (without prejudice) entirely.

---

[1]     Two defendants move for judgment on the pleadings. These are Defendants Harned Oil, Inc. and Bronstein Container Company. *See* Motions for Judgment on the Pleadings (Doc. Nos. 1948, 1965). Functionally, their arguments are the same as those found in the numerous 12(b)(6) motions.

## I.     Factual and Procedural History

Metro[2] alleges that numerous Defendants are liable for the release and/or threat of release of hazardous substances from the facility known as Metro Container Site located in Delaware County, Pennsylvania. The Metro Container Site is eleven acres of industrial area about 20 miles southwest of Philadelphia.

The site was placed on the National Priorities List in 2012. The following year, the EPA determined that the site presented a risk to the public health, and detailed in an action memorandum a removal response plan for the site. In 2015, the EPA notified additional "potentially responsible parties" (PRPs) of their opportunity to participate in a remedial investigation and feasibility study for the site. In response to the EPA's 2015 notice letter, members of the Metro Container Group entered into an Administrative Settlement Agreement and Order on Consent for Focused Remedial Investigation/Feasibility Study with the EPA, for further study of the scope of contamination at the site and for probing on any alternatives to the removal action. This agreement is referred to as the RI/FS AOC. The agreement required payment of EPA's future oversight costs, and the establishment of financial assurance for the benefit of EPA in the amount of $1,500,000.

---

[2]     The Metro Container Group is an unincorporated association that consists of the following members, in their own right: Exxon Mobil Corporation; ExxonMobil Oil Corporation; BP Products North America Inc.; BP Lubricants USA Inc.; Atlantic Richfield Company; E.I. du Pont de Nemours and Company; Chevron Environmental Management Company, for itself and as Attorney-in-Fact for Chevron U.S.A. Inc.; Superfund Management Operations, a series of Evergreen Resources Group, LLC (for itself and for Sunoco, Inc. (R&M) (f/k/a Sun Refining and Marketing Company) and Sunoco, Inc. (f/k/a Sun Oil Company)); Rohm and Haas Company; Tunnel Barrel and Drum Co., Inc.; Veolia ES Technical Solutions, LLC; and Stauffer Management Company LLC, as litigation agent for Bayer Crop Science, LP, successor to Stauffer Chemical Company. Each of the members of the Metro Container Group is an assignee of the CERCLA claims at the Metro Container Site of those entities who have settled or will settle with the Metro Container Group, and each member has assigned its claims in this case to the association. All of the members of the Metro Container Group are signatories to the two settlements made with the EPA that govern the cleanup efforts at the site: RI/FS AOC and the Removal Action AOC.

The EPA and the members of the Metro Container Group also entered into a separate Administrative Settlement Agreement and Order on Consent for Removal Action, which purportedly took effect in September 2015, requiring enumerated removal steps. This agreement is referred to as the Removal Action AOC.[3] The agreement also required reimbursement of EPA's future oversight costs. Metro alleges that to date, it has incurred over $4.5 million in response costs at the Metro Container Site. Metro also alleges that it will continue to incur additional recoverable response costs, including attorneys' fees and expenses to search for other PRPs associated with the site, and to execute administrative functions, that are "closely tied to the response actions at the site." Am. Compl. at ¶ 32.

Metro alleges that each of the Defendants transported waste to the site or arranged that waste at the site be treated and/or disposed of at the site. Metro also claims certain of Defendants are "responsible for" other actors who contributed to the accumulation of waste at the site. Such hazardous substances purportedly contaminated the soil and groundwater at and near the site.

Metro initiated this litigation in August 2018. The case was stayed in October of that year, because the parties sought early settlement. Order of October 10, 2018 (Doc. No. 15).[4] Over the course of the stay, Metro voluntarily dismissed numerous defendants. The litigation re-commenced procedurally in June of 2019, with the filing of an amended complaint, namely, asserting the same causes of action as sought in the initial complaint: cost-recovery and

---

[3]     At oral argument, the parties agreed that the settlement agreements underlying this litigation are integral to the pleadings. While as a general rule, the Court's analysis on a motion to dismiss eschews consideration of matters outside of the pleadings, an exception lies where a document is integral to the complaint. *See In Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). Finding the parties' mutual acknowledgement on this point is appropriate under the circumstances of this litigation, the Court need not assess the propriety of whether to consider the settlement agreements in its ruling on the pending motions.

[4]     Indeed, in Metro's papers, it represented it had requested the stay to allow it to make settlement offers and dispose of the claims against as many defendants as possible.

contribution from each of Defendants for past and future costs incurred for response activities, and a declaration with respect to each defendant's share of liability for future incurred response costs. In the amended pleading, Metro named over 400 defendants. Numerous defendants have since then been dismissed.[5]

## II.    Overview of CERCLA Liability

In 1980, Congress enacted CERCLA as a broad remedial statute to "'provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.'" *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp 1354, 1361 (D.N.J. 1996). The main purpose of CERCLA is to "'effectuate quick cleanups of hazardous waste sites.'" *Id.* (citation omitted).

CERCLA is "'notorious for its lack of clarity and poor draftsmanship.'" *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 704 (3d Cir. 2019) (citing *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir. 1993)). Yet, its broad parameters are ascertainable. *Cranbury Brick Yard, LLC*, 943 F.3d at 704. CERCLA provides a private right of action under two specific provisions, Section 107 and Section 113. CERCLA provides private litigants the right to seek contribution under Section 113(f)(1) & (2), and cost recovery under Section 107(a). *Id*; 42 U.S.C. §§ 9607(a), 9613(f)(1) & (2). These provisions complement each other and offer distinct rights "to persons in different procedural circumstances." *Consol. Edison Co. of N.Y. v. UGI Utils., Inc.*, 423 F.3d 90, 99 (2d Cir. 2005).

Under CERCLA, there are four potentially responsible parties that may be held liable under Sections 107 and 113, two of which Metro alleges each moving defendant to be. First, an arranger (or generator) is a person or entity who by contract or agreement arranged for disposal or treatment,

---

[5]    On October 31, 2019, the Court stayed discovery pending the outcome of the instant motions. Order (Doc. No. 1757).

or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances. Second, a transporter is any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance. 42 U.S.C. § 9607(a)(1)-(a)(4).

Section 107(a) provides reimbursement for necessary response costs that are consistent with the National Contingency Plan. Under Section 107(a), arrangers or transporters may be held liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe[,]" and "any other necessary costs of response incurred by any other person[.]" 42. U.SC. § 9607(a)(4)(B). Should a claim for cost-recovery prevail, the defendants are held strictly and jointly and severally liable. *Pa. Dep't of Envtl. Prot. v. Trainer Custom Chem., LLC*, 906 F.3d 85, 90 (3d Cir. 2018). The statute of limitations applicable to this cause of action is six years from the time the cleanup commences, for remedial actions, and three years, for removal actions. 42 U.S.C. §§ 9613(g)(2)(A)-(B).

Section 113(f) provides a second private right of action for polluters, providing that if the "polluter is or may be liable under CERCLA or has settled its liability with a state or the federal government, it may sue other polluters for 'contribution.'" *Cranbury Brick Yard, LLC*, 943 F.3d at 705 (citing 42 U.S.C. § 9613(f)(1), (3)(b)). Contribution permits a "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, with the shares being determined as a percentage of fault." *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007). Actions for contribution under § 113(f) must be filed

within three years from the date of a judgment, the date of an administrative order relating to a *de minimis* or cost recovery settlement, or the date of a judicially approved settlement. 42 U.S.C. § 9613(g)(3); *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 763 (6th Cir. 2014) (citation omitted). CERCLA does not expressly provide for a statute of limitations applicable to contribution claims stemming from the kinds of settlements at issue here, that is, administrative settlement and consent orders.

A plaintiff can also assert a claim for declaratory relief under Section 113(g)(2)(B) of CERCLA. *See* 42 U.S.C. § 113(g)(2)(B) ("[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.")

LEGAL STANDARD

## I. Federal Rule of Civil Procedure 12(b)(6)

As is well-documented, a Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. While Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to give the defendant fair notice of what the claim is and the grounds upon which it rests," the plaintiff must provide "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, to survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. The Court assumes that the allegations in the complaint and all reasonable inferences emanating from the allegations are true, viewing those facts and inferences in the light most favorable to the non-moving party. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court ignore or even discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. This necessarily leads to a balancing of familiar considerations with which the lawyers and litigants in this case are very well-versed.

## II. Federal Rule of Civil Procedure 12(c)

The standard for evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for failure to state a claim is the same as the familiar standard used for evaluating a motion to dismiss under Rule 12(b)(6). *See, e.g., Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010) (citing *Turbe*, 938 F.2d at 428); *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n. 4 (3d Cir. 1986). In fact, because "Rule 12(h)(2) provides that '[a] defense of failure to state a claim upon which relief can be granted' may be advanced in a motion for judgment on the pleadings under Rule 12(c)," the distinction between a motion under 12(b)(6) and a motion under 12(c) "is purely formal." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

## III. Federal Rule of Civil Procedure 12(b)(2)

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court takes the allegations of the complaint as true. *Stann v. Olander Prop. Mgmt. Co.*, No. 11-7865,

2014 WL 3628588, at *2 (E.D. Pa. July 23, 2014). However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through affidavits or competent evidence, contacts with the forum state sufficient to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). The plaintiff must establish those contacts with reasonable particularity. *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1996). Once the plaintiff makes out a *prima facie* case in support of personal jurisdiction, the burden shifts to the defendant to establish that some other considerations exist which would render exercise of personal jurisdiction unreasonable. *Stann*, 2014 WL 3628588, at *2 (citing *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).[6]

## DISCUSSION[7]

In an Order dated January 16, 2020, the Court previously identified seven main challenges to Metro's complaint, set forth as follows:

1. Plaintiff has failed to state a claim under CERCLA § 107(a) (cost recovery) because Plaintiff has insufficiently pled the requisite elements of the claim.

2. Plaintiff has failed to state a claim under CERCLA § 113(f) (contribution).

---

[6] While some defendants seek a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), in the light of the Court's ruling, the Court does not address this argument. Furthermore, for the reasons elaborated, the Court does not address the challenges based on the assertion that Metro has failed to effectuate service. *See* Fed. R. Civ. P. 12(b)(5).

[7] As an initial matter, the Court rejects Metro's arguments seeking denial of several of the pending motions due to purported technical issues. For example, Metro seeks dismissal or the refiling of motions filed by Defendants Mega Concrete Inc. and Loomis Armored US, LLC because their letter joining other motions rely in part on motions that were deemed moot after the proponents of those motions were dismissed from the action. Metro also seeks the Court's rejection of pending letters that it states violate Rule 11 because these letters joining other motions allegedly fail to proffer the support necessary to satisfy Rule 11. Joint Status Report (Doc. No. 2020), pp. 7-9. The Court permitted the defendants to file such joining letters, and at this time, does not welcome Metro's attempt to skirt the merits of their challenges. *See* Order (Doc. No. 1949). Moreover, after an extensive hearing on the motions, the Court is satisfied that Metro has been given the opportunity to address the arguments raised by the Moving Defendants. Metro also seeks the denial of several motions and letters filed by defendants where the defendants previously filed motions, arguing that FRCP 12(h) states certain enumerated defenses are deemed waived if a litigant had the opportunity to assert those defenses in a prior motion. In the interests of justice, the Court will address the merits of the parties' disputes.

3. Plaintiff's recovery claim under Section 107(a) is barred because Plaintiff cannot assert both a recovery and contribution claim under CERCLA.

4. Plaintiff's request for response costs is improper because it seeks costs, fees, or expenses it cannot recover.

5. Because Plaintiff's recovery claim fails, so must its declaratory relief claim.

6. The defendants (each specifically) are not a proper party to the action and are only alleged to be responsible for the actions of others without factual allegations supporting their liability.

7. Plaintiff is not a real party in interest.

Order (Doc. No. 1949). The Court addresses each challenge in turn.

## I.     Challenges 1, 3, 4 to the Section 107(a) claim.[8]

### a. Parties' Arguments

Defendants' challenges with respect to this cause of action are three-fold. First, the Section 107 claim is barred as a matter of law under circuit precedent. Relatedly, Metro has failed to plausibly allege necessary response costs because it seeks costs that are not recoverable. Third, Metro has otherwise failed to plausibly allege the other elements of a Section 107(a) claim.

In response, Metro contends it has sufficiently alleged all the elements of the claim, and, certainly, that it incurred necessary response costs. While it contends that it incurred response costs as a result of its settlements with the EPA, it also purports it has incurred other voluntary response costs. Thus, it may assert both cost recovery and contribution claims at this time.

### b. Discussion

The determinative issue as to this cause of action is whether Metro, as a matter of law, may assert both a Section 107(a) claim alongside its contribution claim. The Court determines Plaintiff cannot.

---

[8]     Because these challenges all relate to Metro's Section 107 claim, the Court addresses them together.

The Third Circuit Court of Appeals has expressly held that "a section 107 action brought for recovery of costs may be brought only by *innocent* parties that have undertaken clean-ups." *New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1120 (3d Cir. 1997). "An action brought by a potentially responsible person is by necessity a section 113 action for contribution." *Id.* "While it is possible that a private person may, under certain circumstances, bring a section 107 action, [a PRP] is not that person[. Instead, the PRP is . . . not permitted, under any scenario, to pursue a section 107 cost recovery action against other potentially responsible persons." *Id.* at 1124.

In *Cranbury Brick Yard, LLC*, the appellate court further determined that if a plaintiff has settled its liability or potential liability with the Government, and it seeks reimbursement for costs incurred, the plaintiff cannot recover under Section 107(a), but only under Section 113(f). In that case, the plaintiff had sued the federal government, seeking to recover money for the time and expense it spent cleaning up hazardous waste at a weapons-manufacturing facility. 943 F.3d at 704. Because the plaintiff had settled its potential CERCLA liability with the state of New Jersey before the cleanup, the appellate court affirmed the district court's finding that the plaintiff was barred from seeking cost-recovery. *Id.* The court of appeals reasoned, Section 107(a) imposes strict, and joint and several liability on those persons or entities found responsible under that provision of CERCLA. Moreover, a polluter that first settles its liability with the Government obtains immunity under CERCLA from contribution liability to other polluters. Thus, permitting the polluter to sue for joint and several liability under the circumstances would create a windfall for that polluter. *Cranbury Brick Yard, LLC*, 943. F.3d at 704 ("[T]his immunity comes with a cost: a polluter who has settled with the government may bring a contribution claim against other polluters, but not a cost-recovery claim."); *see also New Castle Cnty.*, 111 F.3d at 1120

("[A]llowing a potentially responsible person to choose between section 107 (with a six-year statute of limitations and joint and several liability) and section 113 (with a three-year statute of limitations and apportioned liability based upon equitable considerations) would render section 113 a nullity."); *SC Holding, Inc.*, 935 F. Supp. at 1362 (noting that "parties [ ] liable for at least some of the response costs incurred in remediating a site . . . are limited to the contribution scheme under section 113(f)[,]" and because the plaintiff was a responsible party under CERCLA, holding that as a matter of law the plaintiff could not proceed on its Section 107(a) claim but only its Section 113(f) cause of action.).[9]

The underlying settlements in this case, the RI/FS AOC and the Removal Action AOC, constitute "administrative settlement[s] for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), pursuant to which Respondents have, as of the Effective Date, resolved their liability to the United States[.]" Removal Action AOC (Doc. No. 1130-5) at ¶ 30.2; RI/FS AOC (Doc. No. 1512-4) at ¶ 24.2. Metro further alleges in its amended complaint that it has resolved all of its liability with the EPA via the RI/FS AOC and Removal Action AOC. Am. Compl. (Doc. No. 664) at ¶ 1067.

Metro additionally avers that its "response costs incurred to date . . . are necessary to address the release and/or threatened release at the Metro Container Site, and are required by EPA in the RI/FS AOC, the Removal Action AOC and otherwise, and as such are consistent with" the

---

[9]     Confusion around the overlap of Section 107(a) and 113(f) apparently arose after the Supreme Court's decision in *U.S. v. Atlantic Research Corp.*, 551 U.S. 128 (2007) "which held that polluters could bring both kinds of claims against one another." *Cranbury Brick Yard*, 943 F.3d at 705. However, since that decision, six circuit courts, including the Third Circuit Court of Appeals, have all reached the same conclusion: if a polluter is immune from contribution claims, it may not assert a cost-recovery claim. *Id.* (citing *Whittaker Corp. v. United States*, 825 F.3d 1002, 1007 & n.4 (9th Cir. 2016); *Hobart Corp.*, 758 F.3d at 768 (6th Cir. 2014); *Bernstein v. Bankert*, 733 F.3d 190, 202 (7th Cir. 2013); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236–37 (11th Cir. 2012) (per curiam); *Morrison Enters. v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir. 2011); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 127–28 (2d Cir. 2010)).

National Contingency Plan. Am. Compl. at ¶31. Such an allegation supports the assertion that for purposes of Section 107(a) viability, Metro is not an *innocent* party. *See also* Removal Action AOC (Doc. No. 1130-5) at ¶ 4.6 (stating that the respondents are responsible parties as described under Section 107(a) of CERCLA); 42. U.S.C. § 9607(a) (identifying four categories of responsible parties).

Furthermore, the language of the Removal Action AOC and RI/FS AOC supports the conclusion that permitting cost recovery in this litigation could create a windfall for Metro and run afoul of the purposes of CERCLA. A provision in both agreements provides that the respondents are jointly and severally liable for compliance with the settlement agreement. Removal Action AOC (Doc. No. 1130-5) at ¶ 6.5; the RI/FS AOC (Doc. No 1512-4) at ¶ 2.2. Furthermore, Section 28.1 of the Removal Action AOC provides for the EPA's covenant not to sue, and states:

> In consideration of the actions that will be performed and the payments that will be made by Respondents under the terms of this Settlement Agreement, and except as otherwise specifically provided in this Settlement Agreement, EPA covenants not to sue or to take administrative action against Respondents pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), for the Work and for Future Response Costs. This covenant not to sue shall take effect upon the Effective Date and is conditioned upon the complete and satisfactory performance by Respondents of all their respective obligations under this Settlement Agreement including, but not limited to, payment of Future Response Costs. . . . This covenant not to sue extends only to Respondents[.]

Removal Action AOC (Doc. No. 1130-5) at ¶ 28.1. Similar language is found in the RI/FS AOC, at paragraph 20.1.

And, finally, a specific provision of both agreements states that because the settlement agreement "constitutes an administrative settlement for purposes of Section 113(f)(2) of CERCLA[,] . . . Respondents are entitled, as of the Effective Date, to protection from contribution

actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA[.]" Settlement Agreement (Doc. No. 1130-5) at ¶ 30.1; RI/FS AOC at ¶ 24.1.

Thus, because Section 113(f)(2) of CERCLA provides that a person who has resolved its liability with the United States in an administrative settlement is not liable for contribution claims made by others, "[t]he effect of [this] language is . . . clear. [The settlement agreement] gives [the PRP] immunity from contribution claims, [and] it bar[s] [the PRP] from seeking cost recovery from other potentially responsible parties." *Cranbury Brick Yard, LLC*, 943 F.3d at 709. In other words, Metro may not use its "immunity [against contribution] as both a sword and a shield." *Id.* at 705. Otherwise, Metro would be able to "recover 100 percent of [its] own costs against [other PRPs], even though [it was] actually responsible for, and ha[s] stipulated [it is] responsible for, a significant portion of the contamination" at Metro Container Site. *Agere Systems, Inc. v. Advanced Environmental Technology Corp.*, 602 F.3d 204, 228 (3d Cir. 2010). Such a result flies in the face of prevailing circuit law.

Metro contends that its Section 107(a) claim survives because it has amassed voluntary response costs outside of the scope of the settlements, and it is highly likely that the evidence unearthed in discovery will show that it incurred recoverable response costs. *See, e.g.*, Opp'n Br. (Doc. No. 1754), p. 4 ("[R]egardless [of] whether attorney's fees are recoverable, Plaintiff has alleged a claim for other voluntary response costs. As discussed above, so long as such attorney's fees and other costs are incurred voluntarily and are not 'pursuant to' the AOCs, Plaintiff has a Section 107 claim for such fees and costs.") At oral argument, Metro posited that some of the purported voluntary costs it incurred outside of the scope of the AOCs were PRP search costs for purposes of sharing liability, costs incurred leading up to the settlement agreements, and costs incurred negotiating with the EPA.

The recent *Cranbury Brick Yard* decision casts doubt on Metro's position. First, whether costs incurred were voluntary is of no moment. In *Cranbury Brick Yard*, the appellate court rejected a similar argument from the plaintiff that because it voluntarily cleaned up the site, it could seek recovery of the expenses it incurred. The Court specifically reasoned "[the circuit's] bar on cost-recovery claims applies as long as a settlement makes that party immune from contribution claims." 943 F.3d at 709. The appellate court also found determinative that the plaintiff's cleanup costs were not fully voluntary. "True, it [had] joined the amended Consent Order freely. But after that, the agreement required it to clean up the site." *Id.* Under the *Cranbury Brick Yard* ruling, it is at best dubious that even the voluntary costs Metro asserts are viable. Moreover, it appears that any PRP search costs, as presented, were incurred in accordance with the AOCs, and thus, compulsory.

In considering the applicable case law that holds that parties who have resolved their liability with the Government and are immune from contribution claims brought by others cannot assert a Section 107(a) claim, Metro's right of recovery is necessarily pursuant to a contribution claim under Section 113(f), assuming Metro meets the requirements for asserting such a cause of action. For these reasons, the Court dismisses the Section 107(a) claim.[10]

## II. Challenge 2: Whether Metro has failed to state a claim under CERCLA Section 113(f) for contribution.

Here, Defendants seek dismissal of the Section 113(f) claim on two main grounds. First, Metro has failed to adequately plead the elements of the claim (including arranger and/or

---

[10] To the extent that Metro attempts to circumvent the prevailing case law by contending it may plead both a Section 107(a) claim and Section 113(f) claim in the alternative, the Court rejects such an attempt. Plaintiff is not entitled to plead, in the alternative or not, a claim under which it can not prevail as a matter of law.

transporter liability).  Second, the contribution claim is premature.  Relatedly, Metro has failed to allege it incurred costs in excess of its equitable share.

a.  Discussion

i.  *Whether the claim is premature.*

The parties' dispute first requires a determination of when the cause of action pursuant to Section 113(f)(3)(B) accrues.

CERCLA itself is silent on the statute of limitations for a contribution claim stemming from the entry of administrative settlements such as the ones underlying this suit.  Nonetheless, the Third Circuit Court of Appeals recently interpreted Section 113(g)(3), the applicable provision, and determined that under CERCLA, a contribution claim accrues the moment "a litigant formally recognizes its CERCLA liability." *Cranbury Brick Yard*, 943 F.3d at 711.  In so holding, the appellate court looked to the text of CERCLA for "clues," reasoning:

> First, § 9613(f)(1) lets a litigant sue for contribution 'during or following any [cost-recovery] action.'  So a litigant can bring a contribution claim after its possible liability is officially recognized in a complaint or judgment. Second, § 9613(f)(3)(B) states that '[a] person who has resolved its liability to the United States or a State ... in an administrative or judicially approved settlement may seek contribution from any person who is not party to [the] settlement.' So a litigant can bring a contribution claim once it has affirmed its potential liability in a settlement with the government. Third, each of § 9613(g)(3)'s triggers—a judgment and three kinds of settlements—formally recognizes a litigant's actual or potential CERCLA liability.

Thus, in light of the textual "clues," the appellate court held that in the case of the consent order between the appellant and the New Jersey Department of Environmental Protection, the contribution claim accrued on the date that the agreement was executed.  This was because, by way of this consent order, the parties "recognized [the appellant's potential liability, settled it, and

acknowledged [its] 'right to seek contribution' from other polluters under § 9613(f)(3)(B)." *Id.* at 711-12.

Metro's contribution claim began to accrue once it entered into the settlement agreements with the EPA. Both settlement agreements were fully executed on August 27, 2015, with the final signature of the EPA. Consequently, the statute of limitations began to run on that date. *See also New Castle Cnty.*, 111 F.3d at 1124 (affirming the district court's determination that the limitations period began to run on the date the consent decrees were entered into by the EPA and the plaintiff).

Having determined when the contribution claim accrued, the Court rejects the contention that the Section 113(f) claim is premature. More specifically, Defendants contend a plaintiff must factually allege that it has incurred costs in excess of its equitable share, and Metro has not yet done so. However, these defendants do not support their assertion with persuasive case law. *See, e.g.*, Def.'s Mot. (Doc. No. 1120-2), pp. 6-7. For example, while one defendant cites to *Reichhold, Inc. v. U.S. Metals Ref. Co.*, No. 03-453, 2004 WL 3312831 (D.N.J. Oct. 27, 2004), the district court there found the third-party plaintiff's claim for contribution as a matter of law was barred because in the underlying case, the third-party plaintiff would be held liable only severally, if liability were determined, and pursuant to a contribution action against it. That is, because it would only ever be held liable for its portion of liability, it could not seek contribution from others. *Id.* at *6. The district court did not address the issue of whether a plaintiff must plausibly allege it has already accumulated expenses beyond its fair share.

Moreover, the Court finds such a contention unavailing in light of the holding in *Cranbury Brick Yard* that the accrual date of a CERCLA contribution claim occurs on the date the parties determine the potential liability of a litigant. Under such an interpretation of Section 113(g)(3), it appears all facts are not needed in order for Metro to assert its contribution claim. In other words,

all facts need not be plead for a contribution claim to survive at the pleadings stage. On this point, while not determinative of the issue, illustrative is the reasoning of the appellate court in *New Castle County* in determining that the plaintiff could not avail itself of the discovery rule with respect to its contribution claim. In that case, the appellate court noted, "[t]he discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all of the facts necessary to bring its cause of action. Under the discovery rule, a claim accrues upon awareness of *actual injury*[, and the plaintiff] was aware of its injury in 1989 when it agreed to undertake costly remedial action at the landfill. That [the plaintiff] did not know in 1989 that it was agreeing to incur [another PRP's] potential fair share of the clean-up costs is not relevant under the discovery rule." 111 F.3d at 1125.

The reverse inference applies. Just as Metro need not have known at the time it signed the underlying settlement agreements that it may incur costs beyond its equitable share for purposes of accrual of the contribution claim, Defendants cannot now assert that the statute of limitations did not begin to run because Metro has not yet incurred, and thus pled it has incurred, costs in excess of its equitable share. Furthermore, in its amended complaint, Metro contends it has thus far paid $4.5 million, and that no others have paid any response costs. Because Metro need not now present all of the facts to substantiate its contribution claim, these factual averments are sufficient at this stage of the proceedings, to raise the inference that Metro has paid more than its pro rata portion.[11]

---

[11]    Defendant D&B Express, Inc. contends that because Metro voluntarily dismissed the defendant without prejudice in February 2019 (Doc. No. 211), and did not file its amended complaint until June 2019, the statute of limitations on the contribution claim has already expired on the claim against D&B Express, Inc. Generally, "a voluntary dismissal constitutes a final judgment in that it ends the pending action." *Scott v. U.S. E.P.A.*, No. 97-6529, 1999 WL 358918, at *2 (E.D. Pa. June 2, 1999). D&B Express, Inc. represents that because the expiration of the applicable statute of limitations was sometime in late August 2018, and Metro untimely filed its amended complaint, the defendant must be dismissed with prejudice from this action. However, an amended complaint may relate back if the claim or defense subject of the amended

*ii.  Whether Metro has adequately pled the elements of a Section 113(f) claim.*

Defendants further challenge the Section 113(f) claim, contending that Metro has failed to plausibly allege the elements of the cause of action. Again, the Court disagrees.

"[T]he elements of the prima facie case for contribution are the same as those for a cost recovery action under Section 107(a)." *Champion Laboratories, Inc. v. Metex Corp.*, No. 02-5284, 2009 WL 2496888, at *23 (D.N.J. Aug.13, 2009) (citing *N.J. Tpk. Auth. V. PPG Industries, Inc.*, 197 F.3d 96, 104 (3d Cir. 1999)). "Plaintiff must show: (a) that the defendant is one of four categories of potentially responsible parties; (b) that there was a release or a threatened release of the hazardous substances from the facility into the environment; (c) that the release or threatened release caused plaintiff to incur response costs; and (d) that the plaintiff's costs were 'necessary costs of response ... consistent with the national contingency plan.'" *Id.*[12]

As to the first element, in the amended complaint, Metro claims all defendants are either generator/transporters, or arrangers. *See* Am. Compl. (Doc. No. 664), at ¶ 1061 ("Pursuant to CERCLA, 42 U.S.C. §§ 9607(a)(3) and/or 9607(a)(4), each Defendant is liable as an arranger or generator of materials containing hazardous substances, which materials were treated and/or disposed at the Metro Container Site; and/or a transporter of hazardous substances who selected the Metro Container Site for the treatment and/or disposal of such hazardous substances, and who transported such hazardous substances to the Site.") For certain of these Defendants, Metro

_____

complaint arises out of the same transaction or occurrence as the original complaint. Fed. R. Civ. P. 15(c)(2) (providing that an amendment will relate back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.") The lynchpin of relation back is whether there was notice to the defendant against whom the claims are now asserted. Here, the amended complaint relates back to the filing of the original complaint. The two complaints arise out of the same transaction or occurrence, and D&B Express, Inc. was a defendant in the original complaint, and had notice of the claims asserted against it now.

[12]     The parties agree that the elements of liability under Section 113(f) rest on the elements of liability under Section 107(a).

additionally avers that each of them contributed a specific amount of waste to the site. The Court finds these allegations sufficient to give Rule 8 notice of whether a defendant is an arranger or transporter, as to the defendants against whom Metro has lodged allegations that they "contributed" a specified amount of hazardous waste. [13]

As to the second element, that there was a release or a threatened release of the hazardous substances from the facility into the environment, Metro avers that

> [t]o date, the hazardous substances identified at the Metro Container Site include: PCBs Aroclor-1248, Aroclor-1254, Aroclor-1260; pesticides dieldrin, chlordane, dichlorodiphenyl-dichloroethane ("DDD"), and dichlorodiphenyltrichloroethane ("DDT"); the PAHs benzo(a)anthracene, benzo(a)pyrene, benzo(b)fluoranthene, dibenzo(a,h)anthracene, indeno(1,2,3-cd)pyrene, chrysene, benzo(k)fluoranthene, 1-methylnaphthalene and naphthalene; inorganic elements arsenic, chromium, lead and mercury; VOCs toluene, benzene, 1,2,4- dichlorobenzene, xylenes, PCE, TCE, carbon disulfide, dimethyl disulfide and methanethiol; and semi-volatile organic chemicals ("SVOCs") bis(2-ethylhexyl)phthalate, 1,1-biphenyl and trichlorobenzene.

Am. Compl. (Doc. No. 664) at ¶ 29. The Court notes that a number of these substances are listed as hazardous substances under 40 C.F.R. § 302.4. *See* 40 C.F.R. § 302.4(a) ("The elements and compounds and hazardous wastes appearing in table 302.4 are designated as hazardous substances under section 102(a) of [CERCLA].") Consequently, Metro has sufficiently alleged the second element of a Section 113(f) cause of action. [14]

---

[13]     To the extent that some defendants have raised the issue that Metro has failed to sufficiently plead that they are transporter entities because Metro has not adequately alleged that these defendants selected a site, the Court finds that from the allegations pled, namely that certain defendants have contributed hazardous waste to the site, and that each transporter has selected the site, that Metro has sufficiently pled site selection. Furthermore, there are other defendants, whom the Court refers as the purported "successor defendants," who are alleged to be liable in this action on the basis that they are responsible for the purported misconduct of other entities. The Court finds that the allegations asserted as to these defendants are not sufficient to give Rule 8 notice, for the reasons elaborated in Section IV of this Memorandum. The Court's finding on this element of the Section 113(f) claim is thus not applicable to the alleged successor defendants.
[14]     Several Defendants also claim that Metro has only alleged *de micromis* waste. CERCLA Section 107(o) provides an exemption to liability where those who arranged or transported for disposal did so with

And finally, as to the third and fourth elements of the contribution claim, Metro has sufficiently placed Defendants on notice that the release or threatened release of hazardous substances caused Plaintiff to incur response costs, and that Plaintiff's costs were necessary response costs consistent with the National Contingency Plan. Indeed, Metro has pled that it entered into two settlements with the EPA, requiring it to implement and execute removal strategies at the site. It has further alleged that any corresponding response costs were part of the National Contingency Plan, and that such activity has caused it to incur over $4.5 million in response costs. Consequently, the Court finds Metro's allegations meet the notice pleading standard with respect to Metro's contribution claim.

III.     **Challenge 5: Because Plaintiff's recovery claim fails, so must its declaratory relief claim.**

The basis of the defendants' contention for dismissal of the declaratory relief claim is that because it has dismissed Metro's substantive Section 107(a) claim, the Court must also dismiss the cause of action seeking declaratory relief.

---

respect to less than 110 gallons of liquid materials or 200 pounds of solid materials containing hazardous substances. 42 U.S.C. § 9607(o). Metro contends it has alleged waste more than the *de micromis* threshold because it asserts each defendant is responsible for the contribution of drums of hazardous substances, which themselves surpass the threshold. At this time, the allegations with respect to the amount of hazardous waste are sufficient such that Metro is entitled to discovery as to the exact contours of the amount. The Court also notes that none of the parties have endeavored to respond to the Court's invitation to delve into the world of the classics to explain any quantitative (or qualitative, for that matter) distinction between "*de micromis*" and "*de minimis*." Furthermore, at oral argument, the parties disputed the sufficiency of the assertion that drums themselves constitute hazardous waste. In light of Metro's allegations, purporting specific hazardous substances have contaminated the site, the Court need not reach this issue at this time. Finally, to the extent some defendants seek dismissal on the basis of the petroleum exception, while CERCLA does exclude petroleum, including crude oil or any fraction thereof, 42 U.S.C. § 9601(14), CERCLA itself does not address the exclusion of contamination resulting from petroleum and petroleum products. *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 12 F. Supp. 2d 391, 409 (M.D. Pa. 1998). Some courts have made the exclusion determination at summary judgment. *Id.* (holding that naptha, "a colorless, volatile petroleum distillate[,]" and kerosene, another petroleum product, are excluded under the petroleum exception). Accordingly, the proper stage of proceedings to determine such an exclusion is for a future date.

CERCLA § 113(g)(2) provides that "in any such action described in this subsection [for cost recovery], the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). The wording of Section 113(g)(2) may limit CERCLA's declaratory relief to an action that initiated with a Section 107(a) claim. However, Metro contends it also seeks declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. "[A] district court may grant declaratory relief under § 113(f) by considering the factors that apply under the Declaratory Judgment Act[.]" *New York v. Town of CLarkstown*, 95 F. Supp. 3d 660, 675 (S.D.N.Y. 2015). Because the Court has permitted the Section 113(f) claim to proceed, and the defendants have not fully substantiated their arguments as to whether declaratory relief may be sought under the present circumstances, the Court declines to dismiss the Section 113(g)(2) claim at this time.

IV.     **Challenge 6: The defendants are not a proper party to the action, and are only alleged to be responsible for the actions of others without factual allegations supporting their liability.**

    a.  Parties' Arguments

Numerous defendants challenge that they are only alleged to be responsible for the actions of others. Some contend that Metro's pleadings are so vague and aver common allegations only as to all the defendants that it is difficult to parse through and craft a response to the allegations. Others argue to the extent Metro seeks to allege successor liability, it has failed to do so. Some of these defendants frame the issue of whether Metro has plausibly alleged successor liability as a matter of lack of personal jurisdiction. Several defendants contend that upon review of documents that Metro has submitted to them, Metro has identified the wrong defendants in this lawsuit.

In opposition, Metro argues it adequately pleads successor liability against these defendants. An emblematic response to the defendants' contentions goes as follows: the amended complaint states Defendant A is responsible for the waste attributed to and dumped at the site by non-party B. According to Metro, the reasonable inference from this type of allegation is "straight[-]forward[,]" namely successor liability. Metro Opp'n (Doc. No. 20). In support of this assertion, Metro claims to have engaged in pre-litigation investigations and reviewed site records that established certain defendants were responsible as successors. Metro further states it relies on public information that the Court can conclude demonstrates successor liability.[15]

### b. Exemplary Set of Allegations as to Defendant Davis Standard, LLC

The following set of allegations asserted against Defendant Davis Standard is useful in demonstrating the kind of allegations that Metro asserts are sufficient to assert successor liability:

- Am. Compl. at ¶ 1 ("Each Defendant generated and/or transported materials containing hazardous substances that were treated and/or disposed of at [Plaintiff's site].)

- Am. Compl. at ¶ 232 ("Defendant Davis-Standard, LLC ('Davis-Standard') is responsible for the waste attributable to 'Egan' and 'Egan Machine Co.'")

- Am. Compl. at ¶ 233 ("According to Metro Container Site records, "Egan" and "Egan Machine Co." contributed at least 92 drums of materials containing hazardous substances to the Metro Container Site.")

- Am. Compl. at ¶ 234 ("To date, Davis-Standard has not paid any response costs incurred by the Metro Container Group at the Metro Container Site.")

### c. Discussion

Regardless of whether the Court addresses the adequacy of Metro's allegations to assert successor liability as a matter of personal jurisdiction or the failure to state a claim, Metro has not adequately alleged successor liability.

---

[15] For example, as to Davis Standard LLC, Metro claims it "conducted a diligent pre-litigation investigation and determined that the applicable Metro Container Site Records, which Plaintiff explicitly relied upon in the Amended Complaint, refer to Davis-Standard." Metro Opp'n (Doc. No. 1363).

A plaintiff asserting successor liability must adequately plead facts that could raise such an inference of successorship. This is true under either FRCP 12(b)(2) or Rule 12(b)(6). *See, e.g.,* *Thomas-Fish v. Aetna Steel Products Corp.*, No. 17-10648, 2019 WL 2354555, at *2 (D.N.J. June 4, 2019) (holding that a court "may assert specific personal jurisdiction over a defendant on a successor liability theory"). To prevail on a theory of successor liability, a plaintiff must allege one of the following: (1) the purchaser assumed liability, (2) the transaction amounted to a consolidation or merger, (3) the transaction was fraudulent and intended to provide an escape from liability, or (4) the purchasing corporation is a mere continuation of the selling company. *U.S. v. General Battery Corp.*, 423 F.3d 294, 305 (3d Cir. 2005). Consequently, Metro must factually allege one of these theories of liability. *See, e.g., Thomas-Fish*, 2019 WL 2354555, at *2 ("To impute the jurisdictional contacts of one corporate entity to another corporate entity, [p]laintiff must plead facts supporting a plausible conclusion that the alleged successor entity is a 'mere continuation' of, is 'the same' as, or 'is not distinct from,' the alleged predecessor entity.")

However, Metro has failed to plausibly allege any of these theories. As a result, the purported successor defendants are left to speculate as to what theory of liability attaches their liability. *Metro does not even use the term successor in its pleadings in reference to any of the defendants.* Although Metro contends otherwise, the allegations it claims pleads successorship only amount to conclusory finger-pointing, certainly nothing more than the lightest weight blanket allegations, intended, it seems, to cover a group of defendants remaining in the litigation at this time. Such a result cannot and does not meet the pleading standards, nor the requirement under Rule 12(b)(2) that Metro make a factual *prima facie case* of jurisdiction over a purported successor. Consequently, under either 12(b)(2) or 12(b)(6), Metro has failed to sufficiently allege successor liability, and the Court will dismiss the complaint against the following supposed successor

defendants, *to wit*: Davis Standard, LLC; Zenith Home Corporation; George Noblett Oil Company, Inc.; Wolyniec Construction, Inc.; Southampton Tire and Service, Inc.; Yourway Transport, Inc.; Penn Petroleum, Inc.; Shipley Energy Co.; The Vane Brothers Company; Mega Concrete, Inc.; Loomis Armored US, LLC; Berry Global, Inc.; Fritch, Inc.; O.F. Zurn Company; Jack Rich, Inc.; and U.S. Xpress Enterprises, Inc.[16] However, at oral argument, the parties represented to the Court that they may seek limited discovery on the issue of successorship liability. Thus, this dismissal will be without prejudice to Metro's ability to amend the complaint with respect to successor liability, to meet the standards set forth under both the pleading rules and Federal Rule of Civil Procedure 12(b)(2). *See, e.g., New York*, 95 F. Supp. 3d at 683 (dismissing for the failure to allege facts sufficient to support an inference of successor liability, but allowing amendment to cure successorship allegations).

## V.  Challenge 7:  Plaintiff is not a real party in interest.

### a.  Parties' Arguments

Several defendants contend that Metro is merely a loose association representing the real parties in interest in this case, and Metro itself is not a proper party in suit. As a result, these defendants argue dismissal is proper because any final result in this case could not bind the members of Metro and potentially would subject Defendants to multiple prosecutions. *See, e.g.,*

---

[16]    The Court has identified these alleged successor defendants on the basis of the papers, oral advocacy, and pleadings suggesting that these defendants are alleged to be liable in this action only on account of the conduct of others. Metro has alleged that Reliable Industries, LLC, Harned Oil, Inc., and Dyer Quarry, Inc. contributed a certain number of drums containing hazardous substances to the site; but these parties also raise issues of successor liability. Consequently, while the Court does not dismiss the complaint against these defendants at this time, to the extent that the parties seek limited discovery on the issue of successor liability, they may request such discovery in accordance with the Court's instructions in the accompanying order. Moreover, at oral argument, counsel for the large defense group, consisting of forty-one (41) defendants identified in Appendix A of the letter docketed at No. 1971, represented that while several of these defendants raise successor liability challenges, the parties are working cooperatively among themselves as to the issue. Consequently, the Court will not dismiss any of those defendants at this time, pending further outreach from the parties.

Motion to Dismiss of Bock Drum Co., Inc. *et al.* (Doc. No. 1162-2), p. 12 (citing Fed. R. Civ. P. Rule 17(a)) (providing that the rule serves to "protect a defendant against a subsequent action by the party actually entitled to recover, and to insure that a judgment will have its proper final effect").[17] The challenge relies on two sub-arguments. First, that the individual members whose interests are assigned to Metro will not have to participate in discovery. Second, that Metro was created solely for the purpose of litigation.

In opposition, Metro asserts that the association Metro Container Group was formed, not in response to litigation, but in response to the EPA's notices for the purpose of conducting response activities. It further contests that as a group, it itself will continue to incur response costs, making it the real party in interest to this action. Metro also offers a stipulation, should one be needed, to the effect that will assist in discovery efforts, and "[i]f Moving Defendants have a problem in the future with Plaintiff's responses to any discovery, they can bring such issues up with the Court as parties would in any other case." Metro's Opp'n (Doc. No. 1359), p. 15.

   b. Discussion

Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." To that end, "[p]laintiff associations are permitted under CERCLA to sue for contribution despite the fact that they are creatures of contract, created to facilitate cleanup and cost recovery efforts of the PRPs[,]" so long as they bind the members of the association to the ruling in the suit. *Karras v. Teledyne Indus., Inc.*, 191 F. Supp. 2d 1162, 1167–68 (S.D. Cal. 2002) (finding that trusts stood in the shoes of individual PRPs and were the proper parties in suit because "actions by trustees brought for the benefit of beneficiaries bind the beneficiaries.").

---

[17]   These defendants also argue, speculatively, given that discovery is currently stayed, that the member Metro companies at best will not be required to provide initial disclosures.

At oral argument, the parties agreed that should Metro submit proof of the purported assignment of claims to Metro in this litigation, the challenge would be mooted. Since the time of the hearing on the pending dismissal motions, Metro has filed proof of such assignment with respect to all the individual members' claims in this case. In light of the representations, the Court is satisfied that Metro is a proper party in interest.

## CONCLUSION

For the aforementioned reasons, the Court will dismiss the Section 107(a) claim, but the Section 113(f) and declaratory judgment claims survive. Moreover, the Court will dismiss the complaint in its entirety against certain of the purported successor defendants as outlined herein. An appropriate order follows.

By The Court:

_Gene E.K. Pratter_

USDJ