# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **METRO CONTAINER GROUP,** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| v. | : | |
| | : | No. 18-3623 |
| **AC&T CO., INC. et al.,** | : | |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                              MAY 31, 2022

The Metro Container Group ("Metro"), an unincorporated association of several entities that settled with the Environmental Protection Agency for storing hazardous materials at an industrial site, has sued numerous companies that also stored hazardous materials at the site. Metro hopes to obtain these companies' shares of the cost of cleaning up the site. Attorneys from Saul Ewing Arnstein & Lehr LLP represented another unincorporated group formed in 1989 for a different removal action at the same Metro Container Site. Metro now asks the Court to disqualify counsel from Saul Ewing from representing two defendants in the instant litigation, Fritch, Inc. and O.F. Zurn Co. For the reasons that follow, the Court will deny the motion in part, but, even though recognizing that no improper disclosures or discussions have been alleged, much less proven, will require Saul Ewing to implement an ethics screen.

### BACKGROUND

**A. Current Litigation**

Metro alleges that numerous defendants are liable for the release and/or threat of release of hazardous substances from a facility known as the Metro Container Site. The Metro Container Site encompasses 11 acres of industrial area about 20 miles southwest of Philadelphia. In 2015, the EPA notified "potentially responsible parties" (PRPs) of their opportunity to participate in a

1

remedial investigation and feasibility study for the Site. In response to the EPA's 2015 notice letter, members of the Metro Container Group entered into an Administrative Settlement Agreement and Order with the EPA, for further study of the scope of contamination at the Site. The EPA and the members of the Metro Container Group also entered into a separate Administrative Settlement Agreement and Order on Consent for Removal Action, which purportedly took effect in September 2015.

Metro alleges that each of the defendants transported waste to the Site or arranged that waste at the Site be treated and/or disposed of at the Site. Such hazardous substances purportedly contaminated the soil and groundwater at and near the Site. Metro initiated this litigation in August 2018 seeking, *inter alia*, contribution from the defendants for the cost of clean-up.

### B. Saul Ewing's Involvement in the Current Litigation

Nearly a year after Metro initiated this litigation, a Saul Ewing attorney entered her appearance as counsel for defendants Fritch, Inc. ("Fritch) and O.F. Zurn Co. ("Zurn") in August 2019. Additional counsel from Saul Ewing filed their appearances on behalf of both defendants in November 2019, April 2021, December 2021, and March 2022. Counsel for Fritch and Zurn have signed several filings: motions to dismiss in August 2019, a letter joining in other motions to dismiss in January 2020, answers to Metro's Amended Complaint in July 2020, and responses to Metro's Limited Discovery Plan in August 2020.

### C. 1989 Removal Action

The Metro Container Site has been the subject of prior cleanup litigation in the 1980s and 1990s. The PRPs reached an Administrative Order on Consent ("AOC") agreement with the EPA on June 16, 1989 for the removal of drums and sludge in a concrete lagoon. Doc. No. 2403-1, at

30. After the completion of the work required by the 1989 AOC, the 1989 PRP group "wound down its activities and dissolved." Everett Decl. ¶ 6, Doc. No. 2403-1.

Saul Ewing was retained in January 1989 by the PRP group in connection with the 1989 matters concerning the Metro Container Site. That group included some members that are in the current Metro Container Group. The lead attorney from Saul Ewing who handled the 1989 removal action is Carl Everett. *See* Everett Decl. Mr. Everett remains a partner at Saul Ewing today, but he has not entered an appearance in this case.

Metro did not consent to Saul Ewing's representation of Fritch and Zurn in the current matter. Pointing to Saul Ewing's involvement in the 1989 removal action, Metro filed a motion to disqualify Saul Ewing as counsel for Fritch and Zurn in February 2022, some 30 months after Saul Ewing first appeared in this case. Fritch and Zurn oppose the motion. The Court held a hearing on April 21, 2022.

### LEGAL STANDARD

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Although the exercise of this authority is usually a matter of discretion, courts in the Eastern District of Pennsylvania follow the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania. E.D. Pa. Local R. Civ. P. 83.6, r. IV(B).

The Rules provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." Pa. R. Prof. Cond. 1.9(a). "[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually
3

distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." Pa. R. Prof. Cond. 1.9 cmt. 2. A lawyer must also not "use information relating to [any prior] representation to the disadvantage of the former client" or "reveal information relating to the representation" except as permitted by the Rules. Pa. R. Prof. Cond. 1.9(c). An individual lawyer's conflicts are imputed to other lawyers in their firm. *See* Pa. R. Prof. Cond. 1.10(a).

Disqualification of an attorney for violating the Rules of Professional Conduct is an "extreme sanction." *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999). "Although disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *Miller*, 624 F.2d at 1201. Courts have a range of means of enforcing the Rules of Professional Conduct and should apply a balancing test to determine if disqualification is the best solution in a particular case. *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984). In fashioning a remedy, courts "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Miller*, 624 F.2d at 1201.

"The party seeking disqualification bears the burden to show that the representation is impermissible." *In re Rite Aid Corp. Sec. Litig.*, 139 F. Supp. 2d 649, 656 (E.D. Pa. 2001). "The lack of timeliness of a motion to disqualify may be considered in balancing potential prejudice, but it should not bar the motion." *Jordan v. Phila. Hous. Auth.*, 337 F. Supp. 2d 666, 678 (E.D. Pa. 2004).

DISCUSSION

Metro argues that Saul Ewing should be disqualified from representing defendants Fritch and Zurn because its attorneys represented several of the current members of the plaintiff Metro Container Group in a similar removal action in 1989. According to Metro, Saul Ewing's new representation is adverse to its former clients, in violation of Rule 1.9(a), and will necessarily involve disclosure of confidential information from that prior representation, in violation of Rule 1.9(c). Fritch and Zurn argue that Saul Ewing's representation is not a conflict because the entity that Saul Ewing represented in the prior removal action no longer exists, and, in any case, Metro has waived this issue by waiting years in this litigation to raise it.

## I. Potential Rule Violations

Metro claims that Saul Ewing's representation of Fritch and Zurn violates Rule 1.9(a). For the Rule 1.9(a) analysis, the Court would typically assess whether Saul Ewing's representation of Fritch and Zurn is adverse to a "former client" and, if so, whether its current representation is "substantially related" to the representation of the former client. Pa. R. Prof. Cond. 1.9(a). The purpose of this rule is to ensure an attorney's "undivided loyalty" to his or her clients. *Int'l Bus. Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978).

But even if there is not an actual conflict, "a court may disqualify an attorney for failing to avoid even the appearance of impropriety." *Id.*; *see also McMahon v. Seitzinger Bros. Leasing, Inc.*, 506 F. Supp. 618, 618–19 (E.D. Pa. 1981) ("Where the appearance of impropriety exists, even if not in fact, disqualification of counsel may be necessary to protect the free flow of information from client to attorney so vital to our system of justice.") (internal quotation marks omitted). Courts must act quickly to remedy even the *appearance* of impropriety to maintain

"public confidence in the propriety of the conduct of those associated with the administration of justice." *Int'l Bus. Machines Corp.*, 579 F.2d at 283.

Here, regardless of whether there is an actual conflict, there is arguably an appearance of impropriety. The prior and current matters involve overlapping group members (including Fritch), and the same Metro Container Site. Without a doubt, counsel from Saul Ewing could, and should, have identified and raised this issue preemptively to avoid the appearance of impropriety, or at least, the important sideshow that has ensued. At the hearing, counsel from Saul Ewing vacillated—suprisingly—on whether they would be willing to voluntarily screen Mr. Everett from this matter. Counsel argued that a screen was not necessary and could be burdensome because Mr. Everett is a useful resource as a firm expert on environmental litigation. But the fact that Mr. Everett *could* provide advice is precisely this Court's concern.

Metro also asserts that Saul Ewing has violated Rule 1.9(c) by using information gained from a prior representation. But, even assuming that certain members of the current Metro Container Group are former clients, Metro has not met its burden as the moving party to "prove that [its former lawyer] has actually revealed information relating to the representation of" them. *Dworkin v. Gen. Motors Corp.*, 906 F. Supp. 273, 277 (E.D. Pa. 1995). Metro does not introduce any evidence that Saul Ewing has disclosed confidential information, instead arguing that there are certain categories of information to which Saul Ewing would have access from the 1989 proceedings and which could inform Zurn and Fritch's negotiating posture, such as prior drum assignments to PRPs.

Saul Ewing contends—correctly—that decades have passed since its representation of the 1989 PRP Group. Saul Ewing also represents that it does not have the file from the 1989 PRP Group representation, that much of the information from this time period has become public, and

6

that Mr. Everett does "not believe the Firm ever received confidential information or other information about its client, the [1989] PRP Group, that could be used to the disadvantage of the Plaintiff or any individual member thereof." Everett Decl. ¶ 11. Metro has not provided any basis for the Court to suspect that any information has actually been disclosed. Thus, the Court accepts Mr. Everett's "uncontroverted" affidavit as evidence that confidential information has not been disclosed. *See INA Underwriters Ins. Co. v. Rubin*, 635 F. Supp. 1, 5 (E.D. Pa. 1983). But the possibility of such a disclosure in the future remains.

## II.     Remedy

Based on the appearance of impropriety, the Court must determine whether disqualification is the proper remedy. Fritch and Zurn have an interest in retaining counsel of their choice and have utilized that choice for several years without Metro's challenge. Courts have an interest in preventing the "tactical use of disqualification motions." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985). Metro tries to explain its delay based on the size of the docket in this multi-party case, rather than tactics. But even if Metro has no tactical motive for this delay, it is unfair to require Fritch and Zurn to find new counsel four years into this litigation while discovery is underway and most of the parties have settled or requested a settlement conference.

Despite the appearance of impropriety, the risk of prejudice to Metro is extremely low. The 1989 PRP group involved an AOC that was resolved decades ago. The current litigation involves a different AOC and a different clean-up. Metro itself admits that there has been complete turnover among each PRP's in-house counsel. Doc. No. 2390, at 10; *see also* Ethics Inquiry No. 2006-06, 2006 WL 2669681, at *3 (noting a "complete change in the senior leadership" such that the prior attorney had no "insider information" for bargaining in the current proceedings). Metro's delay in raising this issue until several *years* after attorneys from Saul Ewing entered their

7

appearance in this case also significantly undermines and dilutes any concern about even memories of confidences from the 1989 proceedings.

An ethics screen provides a proportionate remedy to address the appearance of impropriety in this representation.[1] Ethics screens are particularly appropriate where prior involvement is attenuated in time, the law firm is large, and few attorneys need to be screened. *See United States v. Bellille*, 962 F.3d 731, 742 n.9 (3d Cir. 2020) (noting that screens are considered less effective in small firms); *James v. Teleflex, Inc.*, No. 97-cv-1206, 1999 WL 98559, at *5 (E.D. Pa. Feb. 24, 1999) (noting that the effectiveness of a screen depends on several factors including "the time lapse between the matters in dispute" and "the size of the firm and the number of disqualified attorneys"); *INA Underwriters Ins. Co.*, 635 F. Supp. at 5 ("If ever a screening mechanism can be effective, this is the case. Wolf Block is a very large law firm, and only one of its members . . . needs to be screened."). Saul Ewing is a large firm with over 400 attorneys, and only four attorneys besides Mr. Everett were involved in the 1989 proceedings.[2] The risk of prejudice to Metro from disclosure of information is undeniably attenuated and Metro delayed several years in filing the disqualification motion, to Fritch and Zurn's detriment. *Jordan*, 337 F. Supp. 2d at 678–79; *Holcombe v. Quest Diagnostics, Inc.*, 675 F. Supp. 2d 515, 520 (E.D. Pa. 2009) ("As disqualification is a severe penalty, it is inappropriate where an ethics screen can adequately protect the affected party's interests.").

The Court will require Saul Ewing to implement a comprehensive ethics screen of attorneys from the 1989 PRP Group representation from this litigation.

---

[1] By analogy to defining the scope of discovery under the Federal Rules of Civil Procedure, the Court considers the principle of proportionality for case management purposes and as a prophylactic. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018).

[2] Metro asserts that the following attorneys represented the 1989 PRP Group in addition to Mr. Everett: William Cluck, Robert Blau, Diane Reznick, and Maurice R. Mitts. Doc. No. 2390, at 6.

## CONCLUSION

For the aforementioned reasons, the Court denies Metro's motion to disqualify counsel in part. The Court will require Saul Ewing to promptly implement a screen in its representation of Fritch and Zurn in this litigation and to report to the Court and to counsel for Metro the details of the screen and its date of implementation. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE