### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **METRO CONTAINER GROUP** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| **v.** | : | |
|  | : | **No. 18-3623** |
| **AC&T CO., INC. et al.,** | : | |
| *Defendants* | : | |

### MEMORANDUM

PRATTER, J.                                                                APRIL 14, 2023

The Metro Container Group ("Metro"), an unincorporated association of several entities, settled with the Environmental Protection Agency for storing hazardous materials at an industrial site in Trainer, Pennsylvania. Metro then brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.* against numerous defendants that also stored hazardous materials at the same site for cost recovery, contribution, and declaratory relief related to costs Metro incurred as part of its efforts to remove contamination at the site.

One of those defendants, Rahway Steel Drum Co., Inc., ("Rahway"), has moved for partial summary judgment on the issue of whether it may be liable for the actions of a number of other entities under a theory of successor liability. This motion is premature, however, because there has not been an opportunity to develop a sufficient record on these issues. Therefore, the Court denies Rahway's motion without prejudice.

1

## BACKGROUND

Writing primarily for the benefit of the parties, the Court assumes their basic familiarity with the facts of the case.[1] The Court recounts portions of the case's procedural history that explain why Rahway's motion, despite arriving years into the litigation, remains premature.

The story begins in Fall of 2019, when several defendants, including Rahway, filed motions to dismiss. While those motions were pending, the Court stayed all discovery in this case to allow for settlement discussions to take place. Then, in March 2020, the Court ordered Metro to submit a proposed plan for limited discovery on the issues of corporate and successor liability. More than a year passed before the Court approved a plan for this limited discovery. Pursuant to this plan, Metro's discovery was limited to 15 interrogatories, 15 requests for admission, and 15 requests for production of documents; all other discovery remained stayed as per the Court's prior order. This stay remained in place until February 24, 2022, after Rahway and other defendants served their discovery responses. No sooner did discovery recommence, however, than new disputes arose, leading the Court to order the parties to participate in mediation. After an initial settlement conference, the Court issued a new scheduling order staying discovery until January 2, 2023 and setting a deadline for summary judgment motions for October 27, 2023. Less than two months after that scheduling order—and two months before discovery was to recommence—Rahway filed the present motion for partial summary judgment.

---

[1] *See Metro Container Grp. v. AC & T Co., Inc.*, 450 F. Supp. 3d 583, 590–92 (E.D. Pa. 2020), *vacated on reconsideration by Metro Container Grp. v. AC&T Co., Inc.*, No. 18-cv-3623, 2020 WL 3060381 (E.D. Pa. June 8, 2020).

LEGAL STANDARD

## I.     Summary Judgment Standard

To succeed on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law," *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013), and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden to demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they do, the burden shifts to the nonmovant to point to specific evidence in the record to show that there is a genuine issue for trial. *Id.* at 324. In other words, "summary judgment is essentially 'put up or shut up' time for the non-moving party," who must "rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

All of this presupposes, of course, that there is a sufficiently developed record. Where discovery relevant to a particular issue has not yet been completed, a summary judgment motion on that issue is premature. *See Sames v. Gable*, 732 F.2d 49, 51–52 (3d Cir. 1984) (reversing grant of summary judgment where answers to certain discovery requests were outstanding). This is especially true where relevant facts "are in possession of the moving party," *id.* at 51 (quoting *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977)), or where critical witnesses have not yet been deposed, *see Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992).

3

## II.     Successor Liability Standard

The parties disagree over exactly what the term "successor liability" encompasses with respect to this case. Rahway uses the term to describe a specific form of indirect liability that CERCLA imposes "on corporations which either have merged with or have consolidated with a corporation that is a responsible party as defined in the Act." *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 92 (3d Cir. 1988), *cert. denied*, 488 U.S. 1029 (1989). This kind of "successor liability" does not apply where a company merely purchases or acquires a responsible party, unless one of four exceptions applies:

(1) The purchaser assumes liability;

(2) The transaction amounts to a consolidation or merger;[2]

(3) The transaction is fraudulent and intended to provide an escape from liability; or

(4) The purchasing corporation is a mere continuation of the selling company.

*United States v. Gen. Battery Corp., Inc.*, 423 F.3d 294, 305 (3d Cir. 2005). Based on this definition, Rahway argues that it has no liability because it did not acquire or purchase any of the nexus parties.

Metro protests that Rahway focuses on purchaser successor liability to the exclusion of two other theories of indirect corporate liability: agency liability and "alter ego" liability. Agency liability exists where there is "[1 [a] manifestation by the principal that the agent shall act for [it],

---

[2] The "de facto merger" exception has four elements under the majority standard: (1) "continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations"; (2) continuity of shareholders resulting from the purchasing corporation paying for the acquired assets with shares of its own stock (which then come to be held by shareholders of the seller corporation so they become a constituent part of the purchasing corporation); (3) "[t]he seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible"; and (4) "[t]he purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation." *Gen. Battery Corp.*, 423 F.3d at 305.

4

[2] the agent's acceptance of the undertaking, and [3] the understanding of the parties that the principal is to be in control of the undertaking." *Behrens v. Arconic, Inc.*, 429 F. Supp. 3d 43, 53 (E.D. Pa. 2019) (citations omitted). "Alter Ego" liability exists where a liable corporation is a mere instrumentality of the defendant; this is determined by looking at a variety of factors, including "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus . . ." *Md. Elec. Indus. Health Fund v. Kodiak Utility Constr., Inc.*, 289 F. Supp. 2d 698, 702 (D. Md. 2003).

## DISCUSSION

The threshold issue for this argument is whether Rahway's summary judgment motion is premature. It is undisputed that the parties have not completed fact discovery; the parties disagree only as to whether there has been *enough* discovery to resolve the issue of successor liability.

So far, the only discovery that has taken place between Metro and Rahway are 15 each of interrogatories, requests for admission, and requests for production of documents per the Court's order. None of Rahway's witnesses have been deposed, nor has any discovery been sought from third parties or other defendants regarding Rahway, despite Rahway stating in its response to Metro's interrogatories that certain questions could only be answered with information in the possession of third parties.

Rahway contends, however, that there has been an adequate opportunity to conduct additional discovery over the course of this case. But there was, in fact, only a brief window— between February 24, 2022 and September 19, 2022—during which discovery was not stayed. Moreover, that period of time coincides with the parties' efforts at mediation. Given the size and complexity of this case, it is quite reasonable that the necessary discovery would not be completed

within this seven-month window. Regardless, discovery in this case has not closed—indeed, it only just recommenced in January 2023.[3]

Moreover, the limited discovery to date appears to raise more questions about successor liability than it answers. For example, one of the entities for whose conduct Rahway claims it is not liable is JTM Drum Co. ("JTM"), which was owned and operated by John A. Foglia, the son of Rahway's owners. Rahway contends that it has never had any ownership interest in JTM and therefore cannot be held liable under CERCLA's direct successor liability. Metro, however, contends that further discovery will show that JTM was in fact an agent or alter ego of Rahway. To date, there has been no discovery from any party about JTM other than Rahway. But JTM was a transporter for several of the other defendants in this case, including some that did not participate in the limited discovery on successor liability; discovery from these parties may reveal the degree to which Rahway may have been responsible for JTM's conduct. Similarly, depositions from members of the Foglia family may shed light on the degree to which Rahway is related to another entity in dispute, Jersey Cooperage, which is co-owned by Anthony J. Foglia, one of Rahway's officers.

Indeed, even to the extent that Rahway contends that it is not liable as a successor because it did not acquire any of the entities at issue, questions remain. JTM, for example, appears to have completely vanished upon John A. Foglia's death in 1996. To date, no discovery has been obtained from John A. Foglia's brothers, both of whom are officers of Rahway, as to what may have happened to JTM's assets and whether Rahway may have acquired them.

---

[3] Rahway correctly points out that a motion for summary judgment may be filed at any time before the close of discovery under Federal Rule of Civil Procedure 56(b). That may be so, but a Court cannot conclude that there is no genuine issue of material fact if relevant discovery is outstanding. *See Sames*, 732 F.2d at 51.

There are also significant outstanding questions on the issue of Rahway's potential *direct* liability related to the entities at issue.[4]  For example,  CERCLA imposes strict liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which [] hazardous substances were disposed[.]" 42 U.S.C. § 9607(a)(2).  Various documents refer to one such disposer as "Anthony Foglia." This could refer to either Anthony J. Foglia—the owner of Jersey Cooperage since 1972—or Anthony P. Foglia—the founder and owner of Rahway until 1989.  Indeed, even Rahway admits that it is unclear to whom "Anthony Foglia" refers.  on the answer, Rahway may be directly liable as a disposer.

CERCLA also imposes direct liability on generators of waste who "arrange[] for disposal or treatment . . . of hazardous substances . . ." 42 U.S.C. § 9607(a)(3).  Liability under this section requires only a finding that a generator of waste had the intent that hazardous substances would be disposed of, regardless of whether the generator knew or intended that the waste would be sent to any particular location. *See Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 612 (2009); *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1046 (D. Mass. 1989). In its interrogatory responses, Rahway admits that it sold some number of drums to JTM and sent others to Jersey Cooperate to be reconditioned. Either of these acts may serve as the basis for CERCLA arranger liability. *See, e.g., Burlington*, 556 U.S. at 612 (CERCLA liability may attach where generators "engage in legitimate sales of hazardous substances" with the intent "that some disposal may occur as a collateral consequence of the sale itself"); *Emhart Indus., Inc. v. New England Container Co., Inc.*, No. 06-cv-218, 2022 WL 15437874, at *4 (D.R.I. Oct. 27, 2022) (discussing the standard for assessing intent in the reconditioning context).  Thus, if Rahway

---

[4] In its motion, Rahway claims to seek only summary judgment on the issue of successor liability. Nonetheless, the relief Rahway requests is to eliminate all drums alleged to belong to is for purposes of this case, which implicates Rahway's direct liability as well.

intended for JTM or Jersey Cooperate to dispose of the drums or the hazardous substances within, they would be directly liable under CERCLA.  Intent, of course, is a fact-intensive issue upon which there has been no discovery.

Each of these outstanding questions prevents the Court from concluding that no genuine dispute of fact exists as to Rahway's direct or indirect liability.  Summary judgment is thus inappropriate at this time.

## CONCLUSION

For the aforementioned reasons, the Court finds that Rahway's motion is premature and denies the motion without prejudice.  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

8